**B.M.L., a minor child, Through her mother, Valerie Michele JONES, her legal representative, Appellant,**

v.

**Leslie R. COOPER, Jr., Appellee.**

No. 03–95–00382–CV.

Court of Appeals of Texas, Austin.

April 3, 1996.

856

John F. Campbell, Campbell & Morgan, P.C., Austin, for appellant.

James E. Farris, Farris & Green, L.L.P., Austin, for appellee.

Before CARROLL C.J., and JONES and B.A. SMITH, JJ.

PER CURIAM.

The issue in this appeal is whether a determination of nonpaternity in a child-support suit by the attorney general precludes the fatherless child from filing a subsequent paternity suit against the same alleged father. B.M.L., a minor child, through her mother, Valerie Michele Jones, as her legal representative, contends that the trial court erred by finding B.M.L.'s suit against Leslie R. Cooper, Jr. precluded by such a previous nonpaternity finding. She appeals the summary judgment granted to Cooper. We will reverse the judgment and remand the cause.

## BACKGROUND

This appeal turns on the extent of the preclusive effect of a 1993 paternity suit on the present suit.

**The 1993 suit**

The Texas Attorney General (the State) filed a petition to establish the parent-child relationship on behalf of Jones's daughter. *In the Interest of B.M.L.*, No. 93–07493 (Dist. Ct. of Travis County, 126th Judicial Dist. of Texas, Jan. 13, 1994). The petition alleged Cooper as the father and requested a paternity determination, temporary support orders, conservatorship, a name change, support, withholding from earnings, production of documents, and attorney's fees. The State served both Jones and Cooper with process.

Jones, B.M.L., and Cooper all submitted to blood tests; Cooper, stationed with the Air Force in Turkey, had his blood drawn there. The test procedures require the test subjects to be photographed; the documents contain pictures of each subject. They also contain Jones's fingerprint, but not Cooper's. Jones appeared at a pretrial hearing and testified. The court dismissed the attorney general's action with prejudice on January 6, 1994 when the blood tests excluded Cooper as the father.

Though not a named party, Jones filed a motion requesting trial de novo and ordering new blood tests in January 1994. She was prompted by receiving a copy of a letter written by a Turkish doctor which was sent to the laboratory that analyzed the blood samples. The doctor claimed that the person from whom the blood for the test was drawn might not have been Cooper. The doctor said he later saw the tested man carrying a badge with a different name on it.

The judgment in the 1993 suit became final without the court acting on the motion; Cooper contends that the court took no action because Jones failed to timely request a hearing on her motion. There was no appeal.

**The 1995 suit**

In 1995, B.M.L., acting through her mother, filed this petition to establish the parent-child relationship. B.M.L. named Cooper as her father. She requested the same elements of relief requested by the State in the 1993 suit.

Cooper filed a motion for summary judgment based on the defenses of res judicata and collateral estoppel. He contended that the 1993 suit established his nonpaternity and was binding because Jones participated in that suit as a witness and by filing the post-trial motion. He attached his attorney's affidavit and documents from the 1993 case: the petition, the blood-test results, the notice of hearing naming Jones, and the dismissal order.

B.M.L.'s response to the summary-judgment motion relied on her nonparticipation in that proceeding. She contended that the 1993 petition showed that the State was interested only in child support and did not represent her full interests. She contended that the court wrongfully failed to appoint a guardian or attorney ad litem for the child when dismissing the case. She contended that her mother's affidavit raised the issue that fraud in the blood test undermined the validity of the 1993 dismissal. She argued that res judicata and collateral estoppel should be ignored when other public policies,

such as avoiding illegitimacy, outweigh the interest in finality of judgments. She similarly contended that her great interest in legitimacy should override the minor inconvenience to Cooper in requiring a second blood test. She also argued that she should not lose her right to establish a paternal relationship because of a judgment in a prior suit in which she did not participate.

B.M.L.'s summary-judgment proof included her mother's affidavit, the Turkish doctor's letter, and her attorney's affidavit. Jones swore that Cooper was the only possible father for B.M.L. and that, if he is not retested, B.M.L. will remain fatherless. The appellants' attorney swore that they were trying unsuccessfully to locate the doctor to have him sign an affidavit, an unsigned copy of which he attached to his affidavit.

Cooper objected to the attachment of the doctor's letter as inadmissible hearsay. He also complained that it contained allegations that Jones, to whose affidavit the letter was attached, could not make on personal knowledge. Cooper also objected to the attachment of the doctor's unsigned affidavit. No ruling on these objections appears in the record.

The trial court granted Cooper's motion for summary judgment.

## DISCUSSION

Before proceeding to the merits of this appeal, we must consider Cooper's motion to strike or disregard extraneous material in B.M.L.'s brief.

■ Cooper complains about the attachment of the Turkish doctor's letter as an exhibit to the brief. He alleges that it was excluded as hearsay from the 1993 suit and that he objected to it in the trial court in this suit on the same ground. With no ruling on the record sustaining the objection, however, the letter remains part of the summary-judgment record on appeal. *See Utilities Pipeline Co. v. American Petrofina Mktg.*, 760 S.W.2d 719, 723 (Tex.App.—Dallas 1988, no writ); *see also Manoogian v. Lake Forest Corp.*, 652 S.W.2d 816, 819 (Tex.App.—Austin 1983, writ ref'd n.r.e.). Because the letter is part of the record on appeal, we see no

harm in its attachment as an exhibit to the brief. Further, the letter is not integral to our decision on the appeal, thus minimizing any harm. We overrule Cooper's motion to strike.

By her sole point of error, B.M.L. contends that the trial court erred by granting summary judgment and holding that she was precluded from bringing an independent paternity action because of the prior trial of that issue.

■ When reviewing a summary judgment, we must take evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve all doubt in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant may win summary judgment at trial by showing the absence of a material issue of fact on each element of an affirmative defense and showing an entitlement to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Nixon*, 690 S.W.2d at 548–49; *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

■■ Cooper asserted both res judicata and collateral estoppel as bars to this action. Res judicata, or claims preclusion, prevents relitigation of a claim or cause of action that has been finally adjudicated, as well as of matters arising out of the same transaction that, with due diligence, should have been litigated in the original suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630–31 (Tex.1992). Collateral estoppel, or issue preclusion, requires a showing (1) that the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) that those facts were essential to the judgment in the first action; and (3) that the parties were cast as adversaries in the first action. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex.1994).

■ The preclusive effect of prior judgments extends beyond parties named in the suit and applies to the privies of those parties. *Trapnell*, 890 S.W.2d at 801–02 (issue preclusion); *Lone Star Partners v. NationsBank Corp.*, 893 S.W.2d 593, 598 (Tex.App.—Texarkana 1994, writ denied). A privy is one who is so connected in law with a party to a

judgment as to have such an identity of interests that the party represented the same legal right in the previous suit. *Phillips v. Allums,* 882 S.W.2d 71, 74 (Tex.App.— Houston [14th Dist.] 1994, writ denied) (citing *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971)). Privity is not established, however, by the mere fact that persons may happen to be interested in the same question or in proving the same facts. *Phillips,* 882 S.W.2d at 74.

The Family Code somewhat codifies the definition of a child's privies. A child is not a necessary party to a paternity suit. Tex. Fam.Code Ann. § 160.003(a) (West Supp. 1996) (formerly Tex.Fam.Code Ann. § 13.07(a)). Others who may bring such a suit include a parent and a governmental entity. Tex.Fam.Code Ann. § 102.003 (West Supp.1996) (formerly Tex.Fam.Code Ann. § 11.03(a)). A provision enacted in 1989 creates a presumption that, in a trial on the merits, the party bringing the paternity suit will adequately represent the interests of the child. Tex.Fam.Code Ann. § 160.003(b) (West Supp.1996) (formerly Tex.Fam.Code Ann. § 13.07(a)) ("the statutory presumption of representation").

■ Texas courts have interpreted narrowly the binding effect of suits by possible privies. The Second Court of Appeals held that, though a child could not appeal a paternity action brought by another, neither was the child bound by that prior action. *R.M.H. by Gabert v. Messick,* 828 S.W.2d 226, 230 (Tex.App.—Fort Worth 1992, no writ). The court held that a mother who did not take the blood tests required in her suit to establish paternity did not fully represent her child's interests; the child was not a party to the case, was not bound by the decision, and could not appeal the judgment. *Id.; accord Stroud v. Stroud,* 733 S.W.2d 619, 622 (Tex. App.—Dallas 1987, no writ) (decided before the statutory presumption of representation's enactment). The *Stroud* court determined that the State and mothers had only an economic interest in paternity litigation and did not share the child's unique interests in establishing paternity such as seeking a relationship with his father, avoiding the stigma of illegitimacy, and gaining the right to inherit. *Id.* at 621–22.

Other Texas courts have held that children may bring their own actions after a failure to find paternity in a divorce decree, but not after an adjudication of paternity. *Dreyer v. Greene,* 871 S.W.2d 697, 698 (Tex.1993) (agreed judgment of paternity in divorce action triggered statutory bar against child's paternity action against a different man); *Attorney General of Texas v. Ridge,* 773 S.W.2d 645, 648 (Tex.App.—San Antonio 1989, writ denied) (paternity suit allowed despite prior parental agreement of nonpaternity in divorce decree). The *Ridge* court commented that its decision was influenced by the fact that the child had not been represented in the divorce action by an attorney, a party, or a guardian ad litem. *Id.* at 648–49.

A recent decision by the Fourth Court of Appeals resembles the facts of the instant case. *See Bellinger v. Purcell,* 914 S.W.2d 630 (Tex.App.—San Antonio, 1995, no writ h.) (designated for publication, cite not yet available). The appellate court reversed a summary judgment denying a paternity action brought by the mother individually and as next friend of her child. *Id.,* slip op. at 633. The summary judgment was based on the preclusive effect of a previously dismissed action filed in New York courts by the mother against Purcell. The New York court dismissed that action after a hearing at which the court found that she had failed to establish clear, convincing, and entirely satisfactory proof of paternity. *Id.* at 631. The child was not represented by an attorney or guardian ad litem in the New York action. *Id.* The Texas court of appeals intimated that the hearing may not have been full and fair because the New York court apparently excluded most of the evidence the mother attempted to introduce, including a blood test that excluded 99.4% of other males as the father. *See id.* at 632. In the Texas case, the mother filed an affidavit in which she explained that a primary purpose in filing the suit was to have many of the child's questions regarding his family background answered. *Id.* The San Antonio court reversed the summary judgment as to the child because the child was not represented in the prior

suit as a party or by counsel and because Purcell did not meet his burden of establishing that the child did not have separate interests in bringing his own action to establish paternity. *Id.* at 633.

Cases from other states do not resolve this dilemma uniformly. The cases fall into two large groups and two small groups based on the interplay of two factors: whether the precedent case was decided on the merits and whether the court found the subsequent case precluded.[1] The two large groups comprise cases in which trial-court dismissals (particularly in which the non-child plaintiff defaulted procedurally) were not given preclusive effect,[2] and suits in which a previous trial on the merits decided against the non-child plaintiffs was given preclusive effect.[3] A comparison of the cases cited in footnotes two and three shows that, in some states, the

child's subsequent suit escapes bar *only* if the previous non-child plaintiff defaulted procedurally. Fewer courts engaged in the reverse pairing of the two factors. Some courts held that cases by non-child plaintiffs dismissed for procedural defaults barred future cases by the child.[4] Still other courts held that even a trial on the merits in a case brought by a non-child plaintiff did not bar a subsequent suit by the child.[5]

■ These cases show a struggle to balance strong, competing societal interests. The Texas cases appear to favor, within reason, children having an opportunity to pursue their own interests in establishing paternity. Though Texas society also benefits by protecting citizens from repetitive and harassing lawsuits, its fiscal, emotional, and informational interests in establishing paternity can outweigh the societal interests in finality of

1.

## TABLE OF STATES' POSITIONS ON THE PRECLUSIVE EFFECT OF A PREVIOUS PATERNITY SUIT BROUGHT BY NON–CHILD PLAINTIFF

| | First case dismissed | First case decided on merits |
|---|---|---|
| No preclusive effect | cases in footnote 2: Alabama, California, *Florida, Indiana,* Maine, Maryland, Minnesota, New York, Ohio, *Rhode Island,* Washington, West Virginia. | cases in footnote 5: Illinois, North Carolina, Virginia. |
| Later suit precluded | cases in footnote 4: Arizona, Delaware. | cases in footnote 3: Arkansas, *Florida,* Louisiana, *Indiana,* New Hampshire, New Jersey. |

Cases from the italicized states have expressed plainly that the nature of the disposition determines the outcome. While Florida and Indiana courts have published cases dealing with each type of disposition, the Rhode Island court merely advised that it would find that a decision on the merits bars a later suit regardless of who brought the earlier suit.

2. See *Guziejka v. Desgranges,* 571 A.2d 32 (R.I. 1990); *State ex rel. Div. of Human Servs. v. Benjamin,* 183 W.Va. 220, 395 S.E.2d 220 (1990); *Johnson v. Hunter,* 447 N.W.2d 871 (Minn.1989); *Ex parte Snow,* 508 So.2d 266 (Ala.1987); *Johnson v. Norman,* 66 Ohio St.2d 186, 421 N.E.2d 124 (1981); *Arsenault v. Carrier,* 390 A.2d 1048 (Me.1978); *Jessica G. v. Hector M.,* 337 Md. 388, 653 A.2d 922, 929–31 (1995); *Elacqua on behalf of Tiffany DD v. James EE,* 203 A.D.2d 688, 610 N.Y.S.2d 354 (1994); *State of Washington ex rel. Dean by Mottet v. Dean,* 56 Wash.App. 377, 783 P.2d 1099 (1989); *P.N.B. by J.L.S. v. J.L.D.,* 531 N.E.2d 1203 (Ind.Ct.App.1988); *State Dept. of Health & Rehab. Servs. for Ward v. Wyatt,* 475 So.2d 1332 (Fla.Dist.Ct.App.1985); *Ruddock v. Ohls,* 91 Cal.App.3d 271, 154 Cal.Rptr. 87 (1979).

3. See *E.I.B. by I.J. v. J.R.B.,* 259 N.J.Super. 99, 611 A.2d 662 (1992); *Dept. of Human Servs. v.*

*Seamster,* 36 Ark.App. 202, 820 S.W.2d 298 (1991); *State Dept. of Health & Rehab. Servs., Ofc. of Child Support Enforcement for Ricks v. Ricks,* 530 So.2d 370 (Fla.Dist.Ct.App.1988); *O'Bannon for O'Bannon v. Azar,* 506 So.2d 522 (La.Ct.App.), *cert. denied,* 511 So.2d 1158 (La. 1987); *T.R. v. A.W. by Pearson,* 470 N.E.2d 95 (Ind.Ct.App.1984); *Opinion of the Justices,* 131 N.H. 573, 558 A.2d 454 (1989).

4. See *Bradley v. Div. of Child Support Enforcement,* 582 A.2d 478 (Del.1990); *Bill by and through Bill v. Gossett,* 132 Ariz. 518, 647 P.2d 649 (App.1982).

5. See *Settle by and through Sullivan v. Beasley,* 309 N.C. 616, 308 S.E.2d 288 (1983); *Commonwealth Dept. of Social Servs. v. Johnson,* 7 Va. App. 614, 376 S.E.2d 787 (1989); *Maller v. Cohen,* 176 Ill.App.3d 987, 126 Ill.Dec. 402, 531 N.E.2d 1029 (1988), *appeal denied,* 125 Ill.2d 567, 130 Ill.Dec. 482, 537 N.E.2d 811 (1989).

judgments. *See Bellinger,* at 632–33; *Stroud,* 733 S.W.2d at 621–22. This conclusion is more compelling as the science of blood-testing in tandem with DNA-screening becomes more precise and dispositive; the burden on alleged fathers of submitting to a second blood draw is minimal compared to the weighty burdens on children of living without knowing who their fathers are. With these added burdens, children (and their representatives) have greater incentive to pursue the suit brought explicitly for the child. Though the Family Code presumes that a statutorily authorized petitioner in a paternity suit will represent the child's interests, the balance of these burdens mandates that courts be particularly sensitive and responsive to evidence tending to rebut that presumption when considering a summary-judgment motion against the child's later suit.

We conclude that Cooper did not carry his burden to establish that the parties to the 1993 suit so fully represented the child's interests as to establish an identity of interests precluding B.M.L.'s suit. Cooper's summary judgment evidence clearly shows that B.M.L. was not a party to the 1993 action and there is no indication that she was represented by an attorney or guardian ad litem. His evidence shows that Jones filed an ineffectual motion for trial de novo after the rendition of judgment without ever having intervened in the suit. Rather than establishing as a matter of law that B.M.L.'s interests were represented in that action, his evidence shows that her child-specific interests were not raised then. In this case, the response to Cooper's motion and Jones's affidavit show that this suit raises these interests by stating that B.M.L. will be fatherless unless Cooper is shown to be the father; though lacking the more compelling detail of the affidavit in *Bellinger,* Jones's affidavit nevertheless raised a fact question as to whether the child's unique interests in paternity were fairly represented by the parties in the 1993 case. Cooper's motion, proof, and response did not resolve this issue. With this fact question lingering, the summary judgment cannot stand on either issue or claims preclusion.

## CONCLUSION

Because Cooper failed to carry his summary-judgment burden on an element of his defense, the summary judgment was erroneous. We sustain point of error one.

We reverse the judgment and remand the cause for further proceedings.