**In the Interest of J.A., a Minor Child.**

**No. 08–04–00244–CV.**

Court of Appeals of Texas,
El Paso.

Aug. 4, 2005.

Rehearing Overruled Dec. 14, 2005.

**8**

Justo Fernandez–Gonzalez and Angelica B. Carreon, The Law Office of Angelica B. Carreon, El Paso, for Appellant.

1. In the record, Nancy Carrasco is referred to as Nancy Romero.

2. The issue of paternity disestablishment based on genetic testing has generated a great deal of national controversy. More than twelve states have enacted legislation permitting disestablishment while others prevent it

Jorge Herrera, Ralph Miranda, Jeff Alder, El Paso, for Appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

### OPINION

ANN CRAWFORD McCLURE, Justice.

This appeal arises from a bill of review proceeding filed by a child which set aside certain provisions of a 1996 divorce decree between Nancy[1] and David Carrasco. The decree adjudicated J.A.'s parentage, specifying that David was her father. In granting the bill of review, the trial court determined that the divorce decree was void with respect to the paternity determination. In effect, the order "disestablished" the parent-child relationship between David and J.A.[2] For the reasons that follow, we dismiss the appeal for want of jurisdiction.

### NATURE OF A BILL OF REVIEW

A bill of review is an independent equitable action to set aside a judgment that is no longer appealable or subject to challenge by a motion for new trial. *Wembley Inv. Co. v. Herrera,* 11 S.W.3d 924, 926–27 (Tex.1999)(*per curiam* ). To prevail, the petitioner must prove (1) a meritorious defense to the cause of action alleged to support the judgment, (2) that she was prevented from making by the fraud, accident or wrongful act of her opponent, (3) unmixed with any fault or negligence of her own. *Caldwell v. Barnes,* 975 S.W.2d 535, 537 (Tex.1998); *Baker v. Goldsmith,*

through application of *res judicata,* laches, and estoppel. *See generally,* John J. Sampson, *Paternity Disestablishment in Texas and the Current Controversy in the United States,* in 2 STATE BAR OF TEXAS ANNUAL ADVANCED FAMILY LAW COURSE, Ch. 52 (2002).

582 S.W.2d 404, 409 (Tex.1979). This last requirement means that the movant cannot have been responsible for the failure to urge the meritorious defense. *Mowbray v. Avery,* 76 S.W.3d 663, 682 (Tex.App.-Corpus Christi 2002, pet. denied). In the context of this case, J.A. essentially alleged that the erroneous parentage determination contained in the decree of divorce was rendered as a result of her mother's fraud and that as a result, she has not benefitted from her true father's love, affection, nurture, shelter, economic support and health insurance.

## FACTUAL SUMMARY

Nancy initiated the divorce proceedings and David was served with process in New Mexico where he was living at the time. He did not file an answer, did not hire an attorney to represent him, and did not appear in court.[3] Although Nancy told her attorney that Luis Oropeza was J.A.'s father, he told her not to say anything. When Nancy and her lawyer appeared in court to obtain the default judgment, Nancy did not tell the judge that J.A. was not David's daughter. In her words, "See, [David] wasn't there to deny the child, and then [Oropeza] wasn't there to admit it was his." She followed the advice of counsel because she was tired of going to court and wanted the divorce finalized.

The Carrascos were divorced on February 21, 1996. Three children were identified in the decree—Thomas Carrasco, Priscilla Carrasco, and Jennifer Aldama (J.A.). Aldama is Nancy's maiden name. Nancy believed J.A. was included because she was born during the marriage.[4] Nancy was appointed managing conservator of the children and David was appointed the possessory conservator. He was ordered to pay child support for all three children. In 2000, David hired an attorney to modify the child support and J.A. was deleted from the support obligation. David was credited $4,000 for support he had already paid for J.A. The Office of the Attorney General later filed a paternity action against Oropeza and sought DNA testing inasmuch as Nancy had named him as J.A.'s father.[5] At the time that suit was filed, the AG was not aware of the Carrascos' divorce decree and upon learning this information, nonsuited the action.

On March 19, 2002, a bill of review was filed by J.A. through an attorney ad litem. Nancy, David, Oropeza, and the Attorney General were named as defendants. Oropeza answered and later filed a motion for summary judgment. Nancy, appearing individually and as next friend, filed an original answer to J.A.'s suit and a counter-petition against Oropeza to establish his parentage.

A hearing was conducted on May 20, 2004.[6] Nancy testified that she was dating

---

**3.** David did not want the divorce and apparently believed that if he did not appear in the proceedings, Nancy would be unable to divorce him.

**4.** Her specific testimony was: "This is the—what the attorney told me. That she was born during the marriage. No matter what I said, she was going to stay as his child until he hired an attorney and denied it."

**5.** The DNA testing rebuttably identified Oropeza as J.A.'s biological father and excluded Carrasco.

**6.** While the evidence encompassed issues related to the bill of review, the motion for summary judgment and the counter-petition for paternity, the trial court clarified that the hearing was addressed solely to the bill of review. Counsel for Oropeza affirmatively stated, "My understanding was that we were here for the bill of review, Judge.... Not for the paternity issue."

Oropeza throughout her separation and that she had maintained a relationship with him for four years. She knew that he was married to another woman. David was aware that J.A. is not his child since the couple had been separated for almost a year before Nancy became pregnant. Oropeza was not joined as a party in the divorce proceeding[7] but he knew that J.A. was his child.[8] He has never provided support.[9]

David did not appear at the hearing but he was represented by counsel. During closing arguments, counsel advised the court that it was in J.A.'s best interest "that the bill of review be granted, and my client so urges." Nancy's counsel joined in this request.[10] The Attorney General took the position that relief should be denied. J.A.'s attorney ad litem argued that David was the adjudicated father and his support obligation should be reinstated.

The parties disagree about the appropriate remedy to be applied here but one thing they all agree upon is that this case presents a procedural nightmare. The trial court noted his displeasure at the conclusion of the hearing:

> Here's my editorial: This has been completely mishandled, I guess, from the very, very, very beginning, when—when this was done without clearly specifying that this child was not the child of [David], compounded by the AG's—not the AG, but the AG court's action in just simply deleting [David]'s name from the

order of support and then turning around and giving him credit, when there was no—really, no motion there to terminate or to—really, to terminate parental rights and not to suspend.

> So, I mean, I don't understand what the court of—court master was doing at that time. And it comes over here, where it lasted so long, because [David]—neither [David] nor ... [Nancy] bothered to file a bill of review. I had to finally appoint an attorney to represent the child to have it done.

> So I'm not very happy with the way this case was processed. The bill of review is granted.

In a written order, the trial court found that fraud was perpetrated in the divorce proceeding. He further found that Oropeza has no standing because he was not a party to the divorce. No findings of fact were requested or filed. Oropeza appeals, joining J.A. as a co-Appellant.

### CAPACITY AND STANDING

 A plaintiff must have both capacity and standing to bring a lawsuit. *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845 (2005). Capacity is a procedural issue dealing with the personal qualifications of a party to litigate. *Id.* at 848, *citing* 6A Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2D § 1559, at 441 (2d ed.1990). A litigant has capacity when he has the legal authority to act,

---

7. Nancy did not involve Oropeza in the divorce proceedings "because we were together. We didn't have this problem, these discussions. After I got divorced, after we had problems, then that's when I asked him for help with Jennifer, just to help me out. He said he wasn't going to help me out."

8. The record includes a YMCA document bearing Oropeza's signature and listing the names of his three children. One of the children listed is J.A.

9. According to Nancy, his specific comment was, "You want money? You take me to court."

10. The attorney representing Nancy in the bill of review proceeding did not represent her in the divorce action. She has not spoken to her divorce attorney since 1996.

regardless of whether he has a justiciable interest in the controversy. *Lovato,* at 848, *citing Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996). Standing, on the other hand, focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *Lovato,* at 848. A litigant has standing when he is personally aggrieved, regardless of whether he is acting with legal authority. *Id.*

■■■ Minors are considered to be under a legal disability, are unable to sue in their individual capacities, and are required to appear in court through a legal guardian, a next friend, or a guardian ad litem. *Lovato,* at 848. J.A. filed the bill of review through a court-appointed attorney ad litem. She has not perfected her own appeal, nor has she in any manner contested the rulings of the trial court which granted the relief she was seeking. Oropeza may not pursue an appeal on behalf of the child as he lacks the legal authority to do so. We shall consider him to be the sole Appellant.

■■■ Nancy and David have filed a joint brief in their role as Appellees. We next address their argument that Oropeza lacks standing to appeal the judgment below. Without standing, a court lacks subject matter jurisdiction to hear the case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993). Standing presents a pure question of law. *See Cleaver v. George Staton Co., Inc.,* 908 S.W.2d 468, 472 (Tex.App.-Tyler 1995, writ denied). Standing generally requires that there be a real controversy between the parties which will be actually determined by the judicial relief sought. *Nootsie,* 925 S.W.2d at 662. We agree that Oropeza has no standing as he was not a party to the Carrasco divorce and the judicial relief obtained thus far has imposed no obli-gation upon him. An appellant may not complain of errors that merely affect the rights of others. *Texas Workers' Compensation Ins. Fund v. Mandlbauer,* 988 S.W.2d 750, 751 (Tex.1999)*(per curiam).* Oropeza will only have standing in the paternity suit which is still pending in the trial court. We express no opinion upon the viability of any claims which may be asserted against him or the availability of any defenses he might raise.

We dismiss the appeal for want of jurisdiction. Consequently, we do not reach Oropeza's issues for review.